NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROLYN GEORGE-JELLISON, | Civil Action No. 08-0359 (SDW-MCA) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | February 9, 2009 |
| Defendant. | |

**WIGENTON**, District Judge

Before the Court is Plaintiff Carolyn George Jellison's appeal of the final decision of the Commissioner of Social Security that she was not eligible for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 §§ U.S.C. 401–33. The central issue presented to the Court is whether the ALJ erred by disregarding the definition of "moderately limited" employed by a testifying vocational expert in interpreting a psychologist's mental residual functional capacity assessment and whether the ALJ erred by substituting his own definition of that term.

This appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, the Court REVERSES and REMANDS the Commissioner's decision.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On January 2, 1998, Jellison filed an application for Disability Insurance Benefits alleging disability from October 15, 1994, to July 1, 2000, due to chronic fatigue syndrome, fibromyalgia, joint pains, seizure disorder, Epstein-Barr virus, depression, anxiety, insomnia, migraine headaches, and stomach problems. (Tr. 57–60.)[2] Jellison returned to work on July 1, 2000. On May 22, 1998, the Social Security Administration denied Jellison's application on the ground that her ailments were not serious enough to prevent her from working. (Tr. 35–39.) Jellison's application for reconsideration was denied on August 24, 1998, for substantially similar reasons. (Tr. 40–43.)

Administrative Law Judge John L. Farley held a hearing on March 15, 1999. (Tr. 208.) On October 22, 1999, ALJ Farley denied Jellison's application because Jellison had the capacity to work. (Tr. 24–34.) On January 25, 2002, the Appeals Council granted a new hearing because the case "was part of a group of cases which were apparently lost in transit to the Appeals Council." (Tr. 47–48.)

A new hearing was held before ALJ Michael H. Noorigian on December 15, 2003. On January 2, 2004, Jellison's application was denied on the grounds that Jellison did not suffer from a "severe" impairment as defined by 20 C.F.R. § 404.1521 and was therefore disqualified from receiving benefits. (Tr. 12–20.) On August 11, 2004, the Appeals Council denied Jellison's request for review. (Tr. 5–7.)

---

[1] Because the issues on appeal are limited to the ALJ's consideration of evidence related to Jellison's mental functional capacity, it is not necessary to examine the entirety of the factual background of the case.

[2] References to the official transcript of the record of proceedings provided by the Social Security Administration are cited as "Tr."

After an appeal, Judge William J. Martini reversed ALJ Noorigian's decision and remanded the case to the Commissioner on August 3, 2006. Judge Martini found that Jellison had "met her burden of showing an impairment 'severe' enough to meet the de minimus standard" as required by 20 C.F.R. § 404.1521. *Jellison v. Comm'r of Soc. Sec.*, No. 04-4943, slip op. at 6 (D.N.J. Aug. 3, 2006). In an order dated October 19, 2006, the Appeals Council vacated ALJ Noorigian's decision and remanded the case to ALJ Dennis O'Leary for further proceedings. (Tr. 236.)

In a March 21, 2007, hearing before ALJ O'Leary, a vocational expert ("VE") testified regarding Jellison's "vocational profile." (Tr. 271.) The VE testified that a person with the claimant's age, education, and work history, who is only able to perform "simple and repetitive tasks," would have job opportunities available to him in the local and national economies. (Tr. 271–72.) During that hearing, counsel for Jellison questioned the VE regarding a May 15, 1998, Mental Residual Capacity Assessment (form SSA-4734) completed by Dr. E. Eckardt, a non-examining state agency medical consultant. On that check-box form, Dr. Eckardt indicated Jellison was "moderately limited" in several respects.[3] (Tr. 170–72; Def. Br. 6.) When asked by counsel to define "moderate limitation" as used on the form, the VE testified that "[e]ssentially the person is not precluded from doing the work, but does not do it at a level that would be considered acceptable in competitive employment without supports. Percentage-wise I would

---

[3] Of the twenty mental activities listed on the form, sixteen are noted as "Not Significantly Limited." Four are indicated as "Moderately Limited":
    6. The ability to maintain attention and concentration for extended periods.
    7. The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
    11. The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
    17. The ability to respond appropriately to changes in the work setting.
(Tr. 170.)

3

estimate between 60 and 70 percent of what an average person could do on a job." (Tr. 276–77.) The VE testified that he had been using that definition for 20 years and that it was based on his experience. (Tr. 277.)

On April 21, 2007, the ALJ denied Jellison's application. (Tr. 205–23.) The Decision states:

> The vocational expert said that his definition of moderate is that you can only perform the task in question 60-70% of the time. There is nothing in the state form [completed by Dr. Eckerdt] that suggests that and I take moderate to mean that while there is some restriction in the task, the work can nonetheless still be done throughout the day.

(Tr. 221.) No citation for this definition was provided.[4] However, the Decision cites to Dr. Eckardt's handwritten notes on Part III of the mental assessment form, which indicated "the claimant can adapt and that her activities of daily living are not significantly limited by her psychological factors." (Tr. 221.) The ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate." On August 17, 2007, the Appeals Council denied Jellison's request to review the decision. (Compl. ¶ 8.) This appeal was filed on January 18, 2008, and briefing was completed on October 21, 2008.

## II.   STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *see* 42 U.S.C. § 405(g)

---

[4] Form SSA-4734 does not define "Moderately Limited" or the other activity levels that may be indicated by the evaluator. However, the form states that "[e]ach mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis." (Tr. 170.)

4

("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted); *see also Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The Third Circuit has elaborated on this standard:

> [O]ur decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence (e.g., that offered by treating physicians)-or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise . . . .

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). In contrast, a decision to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984).

### III. DISCUSSION

Jellison argues the ALJ erred by disregarding the VE's definition of the term "moderately limited" as used on the Mental Residual Functional Capacity Assessment form completed by Dr. Eckerdt. Jellison also argues that the ALJ erred in failing to adequately address Jellison's moderate limitations as reported by Dr. Eckerdt. Jellison requests that this Court either reverse the ALJ's decision and declare she is entitled to disability benefits for the relevant period or remand the case for further proceedings. (Compl. at 4.)

The Commissioner seeks remand for a supplemental hearing before an ALJ so that the extent of Jellison's mental impairment can be assessed after obtaining additional expert testimony. The Commissioner states that "it is not clear how the ALJ reached his residual functional capacity assessment with respect to plaintiff's mental impairment" and that the ALJ "did not set forth the weight he gave to the assessments of Dr. Candela or Dr. Eckardt as required by 20 C.F.R. §§ 404.1527(d), (f)." [5] (Def.'s Br. 10.) The Commissioner also concedes that "the ALJ should not have defined the meaning of the term 'moderate' as used in a medical report without clarification" and that if the ALJ believed Dr. Eckerdt's assessment to be ambiguous, he "should have utilized the services of a medical expert to assess plaintiff's mental functional capacity." (*Id.*)

The Mental Residual Functional Capacity assessment form, which contains the phrase "moderately limited," is medical evidence because it was completed by psychological professional. *See* 20 C.F.R. 416.946(a). As such, it appears that the ALJ did not err by discounting the VE's testimony defining that phrase. *See Dobrowolsky v. Califano*, 606 F.2d 403, 410 (3d Cir. 1979) (expressing "reluctan[ce] to regard the vocational expert's testimony as substantial evidence, inasmuch as it is apparent from the record that [the vocational expert] was asked to interpret medical evidence"). Although the VE testified he had over twenty years of experience as an expert witness in disability benefit hearings (Tr. 277), the VE is not a physician or psychologist. Accordingly, it appears the ALJ correctly disregarded the VE's definition of "moderate" in reaching his decision. The Commissioner concedes this.

However, the ALJ erred by applying his own definition of "moderate" in relation to Jellison's mental residual functional capacity assessment. An ALJ "may not make speculative

---

[5] Anthony Candela, Ph.D., examined Jellison in February, 1998. (Tr. 158–60.)

6

inferences from medical reports" and cannot make decisions about medical evidence based on "his or her own credibility judgments, speculation, or lay opinion." *Morales,* 225 F.3d at 317–18 (3d Cir. 2000); *see also Bordes v. Comm'r of Soc. Sec.*, 235 Fed. App'x 853 (3d Cir. 2007).

In *Bordes*, a doctor's outpatient note relating to a diagnosis was included among the medical evidence reviewed by the ALJ. The outpatient note stated that the claimant received "'some relief' from anti-inflammatory medication." *Id.* at 864. The ALJ concluded, based in part on the doctor's comment, that the claimant's "condition could not have been too dire" and was therefore not disabled. The Third Circuit rejected the ALJ's conclusion because the ALJ interpreted the word "some" in the medical report instead of relying on a medical expert for further clarification.

Similarly, the ALJ in this case should not have substituted his definition of "moderately limited." Instead, the ALJ should have obtained the testimony of a medical or psychological professional to interpret Dr. Eckerdt's conclusions and to define the scope of Jellison's moderate mental limitations. *See Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999) ("The ALJ was obligated to investigate the claimant's mental impairments . . . by seeking medical assistance.").

Because it appears that the ALJ did not adequately address the issue of Jellison's mental functional capacity, specifically the definition of "moderately limited," the case is hereby REVERSED and REMANDED for further proceedings consistent with this opinion.[6]

---

[6] The Court is aware that Jellison's application for Disability Insurance Benefits has been pending for over 10 years. As such, the Court expects the Commissioner will treat this Court's Order of Remand with all due expediency.

**SO ORDERED.**

<u>s/ Susan D. Wigenton</u>
**Susan D. Wigenton, U.S.D.J.**

cc:     Magistrate Judge Madeline C. Arleo